FOURTH DIVISION
February 8, 2007

1-05-2950

| | | |
|---|---|---|
| CAROLYN PHILLIPS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| BUDGET RENT-A-CAR SYSTEMS, INC., | ) | |
| AND RANGER SECURITY, INC., | ) | Honorable |
| | ) | Michael J. Hogan, |
| Defendants-Appellees. | ) | Judge Presiding. |

PRESIDING JUSTICE QUINN delivered the opinion of the court:

Plaintiff Carolyn Phillips appeals from the judgment of the circuit court of Cook County granting summary judgment for defendants Budget Rent-A-Car Systems, Inc. (Budget), and Ranger Security (Ranger).  In addition, she appeals the circuit court's denial of her motion for reconsideration of summary judgment in favor of Budget.  For the following reasons, we affirm.

BACKGROUND

This case arises from an automobile accident that occurred on July 2, 1997.  The accident resulted from a high-speed police chase during which an unidentified driver of a stolen Budget rental vehicle collided with plaintiff's vehicle as the driver

1-05-2950

fled from police.  Plaintiff suffered multiple injuries as a result of the vehicular collision.

The procedural history of this case shows that plaintiff filed an initial suit on August 15, 1997, and filed an amended complaint on August 24, 1998.  Thereafter, on May 19, 2000, the circuit court granted plaintiff's motion to voluntarily dismiss the initial action and dismissed plaintiff's case without prejudice.

On May 18, 2001, plaintiff filed the current action.  In her complaint, plaintiff alleged two counts of negligence against Budget and one count of negligence against Ranger.  Specifically, plaintiff alleged that Budget breached its duty to maintain control over its vehicle so as to prevent harm to persons lawfully on public streets, and that Budget and Ranger breached their duties to prevent unauthorized personnel access to that vehicle so as to prevent harm to members of the general public. Budget filed its answer on July 26, 2001, and Ranger filed its answer on September 7, 2001.

Following discovery, Budget filed a motion for summary judgment on August 19, 2004.  With permission of the court, plaintiff conducted further discovery and on December 21, 2004, filed a response to Budget's motion.  Therein, she stated that special circumstances, specifically that Budget had gone to great

-2-

1-05-2950

lengths to prevent vehicular thefts by hiring a security company and installing "tiger teeth," existed to make the accident foreseeable.

During discovery, Budget disclosed that to facilitate the movement of its vehicles, it kept the keys of its vehicles in the vehicles' ignitions. Budget also employed "hikers" to transport rental vehicles between facilities to maintain proper inventory. Hikers moved 200 to 250 vehicles per day among Budget facilities. When demand for vehicles at locations was great, Budget would have other employees such as service agents, mechanics, and bus drivers act as hikers.

In order to transport a vehicle from the O'Hare facility to another facility, a hiker needed to show a nonrevenue transport ticket (NRT) to Ranger security before exiting the facility. The on-duty manager or other distribution personnel provided the hiker with blank NRTs and would instruct him to select a particular class of vehicle to transport. The hiker would then record the vehicle's identification information on the NRT, including the vehicle identification number, license plate number, vehicle's owning city, and the sending and destination cities. The hiker would also record his identification number and the vehicle's milage before signing the NRT.

Pursuant to the security guard agreement, the primary

-3-

responsibility of Ranger was "to [ensure] that no vehicles are taken from the facility without the proper authorizations." The agreement procedures specifically provided that a Ranger guard could permit a service agent or customer service representative to remove a vehicle not on a rental contract from the Budget facility only if the driver presented an NRT signed by a Budget manager. The security guard was then to cross-reference the signature with a list of names that Budget was to provide the guards and to make sure the correct date was on the NRT. The guard kept a copy of the NRT. The parties agree, however, that Budget never provided Ranger personnel with a list of names of Budget managers who could authorize an NRT.

That said, the agreed facts in this case show that about 5:37 a.m. on June 24, 1997, an unidentified driver of a Budget 1997 Ford Explorer presented an NRT signed by James Dawson, a courtesy bus driver and service agent stationed at the Budget O'Hare facility, and initialed by Les Holiday, a lead hiker, to a Ranger guard. Although the NRT had the correct sending and receiving locations listed, it had erroneous vehicle milage, where it listed 13,467 miles while Budget computer data showed 7,490 miles, an improper date, where it was marked June 24, 1996, instead of June 24, 1997, and the wrong identification number for Dawson. Despite those errors, the Ranger guard permitted the

unidentified driver to exit the facility with the vehicle.

Subsequently, around June 30, 1997, Budget's Midway Airport facility manager Rica Hernandez received an inactive report alerting her that the Midway facility never received the 1997 Ford Explorer. After investigating the matter, Hernandez prepared a "Missing Vehicle Report" and faxed it to Daniel Martin, Budget's security manager, on June 30, 1997. Martin, who had been on vacation, reviewed the fax on July 1, 1997.

Martin further investigated the matter. When he questioned Dawson as to his alleged signature on the NRT used to remove the missing Ford Explorer, Dawson denied that the signature was his. Dawson's supervisor Bryant Small confirmed that the signature on the NRT was not Dawson's. Subsequently, Martin reported the vehicle stolen to the Chicago police department. Budget also notified LoJack, which electronically monitored Budget vehicle movements through its vehicle tracking system.

On July 2, 1997, LoJack located the stolen Ford Explorer at 6750 South Normal Boulevard in Chicago, which was approximately 26 miles from the Budget O'Hare facility. Police found the vehicle, and after observing an unidentified individual enter it, they attempted to stop him. A high-speed police chase ensued during which the stolen Ford Explorer hit plaintiff, who was walking across the intersection at 69th Street and Halsted

1-05-2950

Street. The driver of the stolen vehicle fled on foot and was never arrested or identified. Plaintiff suffered a fractured pelvis, a broken left arm and leg, and several head injuries.

Based on the pleadings and this record, the circuit court granted Budget's motion for summary judgment on January 21, 2005. The circuit court also denied plaintiff's motion for reconsideration on August 16, 2005.

On February 17, 2005, Ranger also filed a motion for summary judgment. Plaintiff filed a response on August 3, 2005, and on August 16, 2005, the circuit court also granted Ranger's motion.

Plaintiff appeals from those orders granting summary judgment.

ANALYSIS

The purpose of summary judgment is to determine whether a genuine issue of material fact exists. <u>Adams v. Northern Illinois Gas Co.</u>, 211 Ill. 2d 32, 42-43 (2004). Summary judgment is appropriate where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there is no genuine issue of material fact and that the nonmovant is entitled to judgment as a matter of law. <u>Adams</u>, 211 Ill. 2d at 43, citing 735 ILCS 5/2-1005(c) (West 2004). In determining whether a genuine issue of material fact exists, all evidence before the court

-6-

1-05-2950

considering summary judgment should be construed in the light most favorable to the nonmoving party. <u>Adams</u>, 211 Ill. 2d at 43. Since summary judgment is a drastic remedy, it should only be granted when the right of the movant is clear and free from doubt. <u>Adams</u>, 211 Ill. 2d at 43. A review of a circuit court's grant of summary judgment is *de novo*. <u>Adams</u>, 211 Ill. 2d at 43.

In the case at bar, plaintiff alleged claims of negligence against both defendants. To prevail, plaintiff had to show that each defendant owed her a duty of care, that defendants breached their duties of care, and that plaintiff incurred injuries proximately caused by those breaches. <u>Adams</u>, 211 Ill. 2d at 43. The primary issue here is whether defendants, Budget and Ranger Security, owed plaintiff a duty of care. Since the question of whether a duty of care exists is a question of law (<u>Adams</u>, 211 Ill. 2d at 43), it constituted a proper issue for summary judgment.

In this court, plaintiff challenges the circuit court's order granting summary judgment for defendants by asserting that Budget owed a duty to prevent the accident in this case where it left the keys in the ignition of the unattended vehicle. Plaintiff further asserts that Ranger breached its duty to prevent the accident where it failed to take the necessary precautions to prevent the stolen vehicle from leaving Budget's

1-05-2950

facility.

We first address the issue of whether Budget owed plaintiff a duty of care.  In doing so, we recognize that plaintiff's claims against Budget are premised on the "key in the ignition" theory due to Budget's ownership of the stolen Ford Explorer. Illinois courts have recognized two classes of cases involving the duty of a vehicle owner to lock his vehicle and to remove the keys from the ignition after parking the vehicle.

The first class of cases involves a defendant's statutory violation.  In Ney v. Yellow Cab Co., 2 Ill. 2d 74 (1954), the defendant's servant, a taxicab driver, left his taxicab unattended on the street with the keys in the ignition.  He thereby violated a statute which provided in pertinent part that a driver was prohibited from leaving his vehicle unattended without first turning off the engine, locking the ignition, and removing the key.  A thief thereafter stole the taxicab and, while in flight, collided with the plaintiff's vehicle.  Our supreme court noted that the defendant's violation of the statute constituted *prima facie* evidence of negligence.  Ney, 2 Ill. 2d at 78-79.  The court further found that an intervening act, even one that was criminal in nature, did not relieve the defendant of liability from the consequences resulting from the taxicab driver's negligence.  Ney, 2 Ill. 2d at 83-84.

-8-

Similarly, the automobile dealer defendant in <u>Kacena v. George W. Bowers Co.</u>, 63 Ill. App. 2d 27 (1965), violated the same statute as in <u>Ney</u> where it had a practice of leaving its vehicles parked on a public street with the keys in the ignitions. Subsequently, thieves stole one of the defendant's vehicles, and the stolen vehicle was involved in an accident with the plaintiff a day later. The plaintiff filed suit against the dealer, and the circuit court entered judgment for the plaintiff.

On appeal, this court, like the supreme court in <u>Ney</u>, stated that a statutory violation was *prima facie* evidence of negligence. <u>Kacena</u>, 63 Ill. App. 2d at 33. Further, despite the remoteness in time and distance of the accident from the defendant dealer, this court found that a question of fact existed as to probable cause, and thus affirmed the circuit court's ruling denying the defendant's motions for a directed verdict and judgment notwithstanding the verdict. <u>Kacena</u>, 63 Ill. App. 2d at 39.

In both <u>Ney</u> and <u>Kacena</u>, the defendants' vehicles were stolen while parked on public property in violation of a state statute. In analyzing the liability of the defendants, the courts determined that the statutory violations were *prima facie* evidence of negligence, and thus confined their discussion to the existence of proximate cause. As noted in <u>Ruyle v. Reynolds</u>, 43

1-05-2950

Ill. App. 3d 905, 907 (1976), the rule in <u>Ney</u>, and consequently <u>Kacena</u>, and the statute therein have been limited to cases involving public streets.

The second class of cases involves a claim of common law negligence where the defendant leaves his keys in the ignition of his vehicle on private property rather than public property, thus negating the application of the statute at play in <u>Ney</u> and <u>Kacena</u>. In this second class of cases, Illinois courts have held that no duty exists to a third party injured by the defendant's stolen vehicle absent special circumstances that made the theft foreseeable. <u>Hallmark Insurance Co. v. Chicago Transit Authority</u>, 179 Ill. App. 3d 260 (1989); <u>Hensler v. Renn</u>, 166 Ill. App. 3d 819 (1988); <u>Ruyle v. Reynolds</u>, 43 Ill. App. 3d 905 (1976).

In <u>Reynolds</u>, the defendant's agent left his vehicle unlocked and unattended with the keys in the ignition in a parking lot. The vehicle was subsequently stolen and involved in an accident with the plaintiff's vehicle. Although the circuit court dismissed the plaintiff's complaint, the reviewing court reversed that dismissal where it determined that the plaintiff's complaint stated a sufficient claim. The appellate court found that plaintiff stated a valid claim based on the defendant's violation of a city ordinance prohibiting a person from leaving a vehicle

-10-

unattended with keys in the ignition in a "public place" (<u>Reynolds</u>, 43 Ill. App. 3d at 907-09), as well as a valid claim under the common law theory of negligence (<u>Reynolds</u>, 43 Ill. App. 3d at 909). In discussing the common law claim, the court noted that given the neighborhood in which the defendant's agent left the vehicle unattended, it was foreseeable that a theft would occur. <u>Reynolds</u>, 43 Ill. App. 3d at 909. As such, the reviewing court held that the plaintiff sufficiently alleged special circumstances which made the theft foreseeable and that the issue of proximate cause was for a jury to decide. <u>Reynolds</u>, 43 Ill. App. 3d at 909. Thus, it reversed the lower court's motion to dismiss. <u>Reynolds</u>, 43 Ill. App. 3d at 909.

In <u>Hallmark Insurance Co.</u>, 179 Ill. App. 3d 260, a thief stole a Chicago Transit Authority (CTA) bus that was located in the defendant CTA's bus barn. The thief subsequently drove the bus into a building owned by the plaintiffs, who alleged that the defendant left the bus unattended without first turning off the engine and removing the keys from the ignition. After the plaintiff filed suit, the defendant filed for summary judgment without filing any pleading or answering the plaintiff's complaint. This court reversed the circuit court's order granting summary judgment for the defendant where it determined that special circumstances existed to raise a genuine issue of

material fact as to the defendant's duty. <u>Hallmark Insurance Co.</u>, 179 Ill. App. 3d at 267. In finding that special circumstances existed, this court determined that plaintiff's uncontested claim that defendant knew of prior thefts stated a sufficient claim. In addition, this court considered the document that the plaintiff attached to its motion for reconsideration, which detailed 27 bus thefts from CTA facilities, including three in three months from the facility in that case.

In the case at bar, Budget's rental vehicles were parked in a private lot. Consequently, this case falls within the second class of Illinois cases involving keys left in the ignition of unattended vehicles. Plaintiff, however, merely alleged that Budget was negligent for failing to restrict access to its vehicles and in its administration of its NRT process without alleging any special circumstances, *i.e.,* previous vehicular thefts at the O'Hare Budget facility. Although plaintiff referenced special circumstances in her response to Budget's motion for summary judgment and asserted therein that Budget took security precautions, she made none of the special circumstance arguments in the circuit court that she proffers in her briefs before this court. As such, those arguments are waived. <u>Daniels v. Anderson</u>, 162 Ill. 2d 47, 56-58 (1994).

1-05-2950

Nonetheless, even if we considered plaintiff's allegations of special circumstances, we find that she failed to establish that Budget owed her a duty to prevent the theft of its vehicle and the ensuing police chase which ultimately led to a collision in which plaintiff sustained multiples injuries.  Unlike Ruyle and Hallmark Insurance Company, upon which plaintiff relies, she failed to sufficiently state facts establishing special circumstances that made the theft foreseeable.  Conversely, we find Renn, 166 Ill. App. 3d 819, apposite to the case at bar.

In Renn, 166 Ill. App. 3d 819, the defendant left his vehicle unattended with the keys in the ignition in a store parking lot.  A thief then stole the vehicle and collided with the plaintiff's vehicle as he drove away.  The reviewing court affirmed the circuit court's order granting the defendant's motion for summary judgment where it determined that the plaintiff failed to establish the existence of special circumstances to sustain a common law negligence claim against the defendant where plaintiff merely claimed that the defendant left the vehicle unattended in a high-crime area.  Renn, 166 Ill. App. 3d at 824.  In doing so, the court stated that it was unwilling to extend the ruling in Reynolds to find a duty on the defendant's behalf absent additional allegations showing that a theft was likely to occur where the public place in which

-13-

defendant parked his vehicle was a heavy traffic area.  Renn, 166 Ill. App. 3d at 824.

Here, plaintiff argues before this court that special circumstances existed in the case at bar that made the theft of Budget's vehicle foreseeable by asserting that Budget employees spend 200 days a year in court litigating criminal activity involving their vehicles, that Martin testified in his deposition that five previous police chases had occurred following the theft of Budget vehicles, and that three of those chases resulted in accidents.  That said, plaintiff fails to assert whether those past thefts occurred at the Budget O'Hare facility and within what time frame.  Further, plaintiff cites only one other instance in which a forged NRT was used to steal a vehicle from a Budget facility.  As such, as in Renn, we find that plaintiff fails to establish special circumstances that made the theft in this case reasonably foreseeable, and thus she fails to establish that Budget owed her a duty of care.

Moreover, foreseeability is only one factor for a court to consider when it seeks to determine whether a duty of care exists.  Duty also depends on the likelihood of injury, the magnitude of the burden on a defendant to prevent an injury, and the consequences of placing such a burden on a defendant.  Adams, 211 Ill. 2d at 44; Rowe v. State Bank of Lombard, 125 Ill. 2d

-14-

1-05-2950

203, 227-28 (1988). The cases cited above involving keys left in the ignitions of vehicles, whether on public or private property, focused on foreseeability and bypassed important public policy questions.

Here, an unknown individual was able to forge an NRT and remove a vehicle from Budget's lot, which the record reveals has only happened on one other occasion. Although Budget was arguably negligent in the administration of its security measures to protect against vehicular thefts, we do not find that those errors created a duty of care to plaintiff with regard to an accident involving Budget's stolen vehicle. To conclude otherwise would place a significant burden on Budget and would expose all rental car companies to third-party criminal liability involving their vehicles. We do not find such a broad duty of care to the general public to be a prudent or reasonable holding. As such, we find that summary judgment was appropriate for Budget.

Having reached that conclusion, we next address the issue of whether Ranger owed plaintiff a duty of care. Plaintiff contends that by entering into a contract with Budget, Ranger "undertook to perform a duty that Budget owed to the public in this area to protect against the streets being filled with thieves operating its stolen rental cars." The basis of plaintiff's argument is

-15-

1-05-2950

section 324A of the Restatement (Second) of Torts, which provides:

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking." Restatement (Second) of Torts §324A (1965).

Plaintiff argues that by entering into the contract with Budget, Ranger assumed a duty to protect her pursuant to section 324A where the high speed chase and accident would have been foreseeable as a result of the theft. For support, plaintiff

relies upon <u>Pippin v. Chicago Housing Authority</u>, 78 Ill. 2d 204 (1979).

In <u>Pippin</u>, a mother brought an action against the Chicago Housing Authority (CHA) and Interstate Service Corporation (Interstate) for the wrongful death of her son, who was allegedly stabbed by a tenant during an argument within the common area of the CHA's building. The record showed that the CHA entered into a contract with Interstate to provide for the protection of CHA's property and "persons thereon." Our supreme court held that given the contract, Interstate owed Pippin a duty of care pursuant to section 324A(c). <u>Pippin</u>, 78 Ill. 2d at 210-12. The supreme court thus affirmed this court's ruling reversing the circuit court's grant of summary judgment for defendants. <u>Pippin</u>, 78 Ill. 2d at 212.

Unlike <u>Pippin</u>, however, the contract between Budget and Ranger did not appear to provide for the protection of third parties. Rather, as previously stated, the contract merely provided that Ranger was to ensure that "no vehicles are taken from the facility without proper authorizations." This language arguably only pertained to Budget's property, not the protection of unforeseen third parties, and thus did not create a duty of care to plaintiff. See <u>Bourgonje v. Machev</u>, 362 Ill. App. 3d 984, 1003 (2005) ("In those cases where the agreements specified

that the guards were intended to protect the tenants, liability attached; but, where it was specified that the guards' function was only to protect property, no liability attached").

Nonetheless, even if we accepted plaintiff's argument that the contractual language could create a duty to an innocent third party, we find that plaintiff's reliance on Pippin seeks to expand the concept of foreseeability beyond that found in Pippin. Unlike in Pippin, the criminal action in this case did not occur on the premises Ranger was hired to protect but rather resulted from the criminal use of Budget property outside the Budget premises. Furthermore, as discussed above, the accident in this case resulted from a forged NRT, which allegedly occurred in only one other circumstance. Accordingly, we find that the accident in this case was not foreseeable, and thus Ranger owed plaintiff no duty of care.

In reaching these conclusions, we further find that even if a genuine issue of material fact had existed as to defendants' duties of care, summary judgment was appropriate in the case at bar due to lack of proximate cause. Although proximate cause is ordinarily a question of fact for the trier of fact to resolve, our supreme court has noted that it is well settled that it may be determined as a matter of law where the facts presented show that plaintiff would never recover as a matter of law. Abrams v.

1-05-2950

City of Chicago, 211 Ill. 2d 251, 257-58 (2004).

Proximate cause consists of two distinct requirements: cause in fact and legal cause. Abrams, 211 Ill. 2d at 258. Cause in fact concerns whether the defendant's conduct is a material factor in bringing about the injury if the injury would not have occurred absent the defendant's conduct. Abrams, 211 Ill. 2d at 258. Legal cause consists largely of a question of foreseeability. Abrams, 211 Ill. 2d at 258.

In Abrams, the plaintiff, a pregnant mother in labor, called the City's 911 service to request ambulance services. The City's 911 dispatcher declined to send an ambulance, however, due to her classification of the plaintiff's situation as not being an emergency. Subsequently, the plaintiff's friend drove her to the hospital. During that transport, the plaintiff's friend attempted to drive through a red light when she did not see any traffic. As she entered the intersection, however, another vehicle, which was speeding at the time, collided with her vehicle. The driver of the second vehicle later admitted in a handwritten statement to police that he was driving on a suspended license and that he had a beer, two shots of rum, and crack cocaine before getting behind the wheel of his vehicle. As a result of the accident, plaintiff suffered in a coma for two weeks and lost her baby. Thereafter, plaintiff sued the City of

-19-

Chicago for the negligent failure to provide ambulance services.

Our supreme court reversed the ruling of this court and reinstated the circuit court's judgment granting the City of Chicago summary judgment in Abrams after determining that based on the alleged facts, the plaintiff could not establish that the City's refusal to send an ambulance was the proximate cause of her injuries. Abrams, 211 Ill. 2d at 264. Specifically, the court held that the City's refusal was not the legal cause of the plaintiff's injuries because it could not have reasonably anticipated that its refusal to send the ambulance would result in the plaintiff's friend driving through a red light and colliding with another vehicle driven by a substance-impaired driver. Abrams, 211 Ill. 2d at 261-62.

The record here shows that only one other alleged incident involving an NRT had resulted in the theft of a vehicle from a Budget facility. As such, defendants could not have reasonably foreseen that the accident in this case would result from their decision to leave the keys in the ignition of the 1997 Ford Explorer and the subsequent release of the vehicle pursuant to a forged NRT.

Moreover, the accident in the case at bar occurred eight days after the theft and 26 miles from the Budget O'Hare facility. In Stanko v. Zilien, 33 Ill. App. 2d 364 (1961), a

-20-

case similar to the one at bar, the defendant, a used automobile dealer, left the keys of its vehicles in the keys of their ignition during business hours while the vehicles were parked on the defendant's private lot. Consequently, a thief substituted the keys of one of defendant's vehicles during the day and returned at night to steal the vehicle. Twelve days later and forty-one and a half blocks away from defendant's place of business, the stolen vehicle driven by the thief struck the plaintiff's vehicle. On appeal, this court upheld the circuit court's grant of summary judgment. In reaching that holding, this court stated:

> "The final point raised by appellant is that even if there was no violation of the statute there was a clear case of negligence at common law. This contention cannot be sustained for the reason that there was no causal connection between leaving the key in the car and the accident twelve days later and 41 ½ blocks from the scene of the theft. To hold the original owner liable in this case would be beyond the bounds of proximate cause." Stanko, 33 Ill. App. 2d at 369.

Like Stanko, we find that the remoteness of time and distance

-21-

prevented the establishment of proximate cause.

CONCLUSION

For the foregoing reasons, we affirm the grant of summary judgment for defendants by the circuit court of Cook County.  In doing so, we also find that the circuit court did not abuse its discretion in denying plaintiff's motion to reconsider the grant of summary judgment for Budget.

Affirmed.

CAMPBELL and MURPHY, JJ., concur.